STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FAULK

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FAULK

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FAULK2021 OK 46Case Number: SCBD-6974Decided: 09/28/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 46, __ P.3d __

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
ROBERT R. FAULK, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, initiated summary disciplinary proceedings against Respondent, Robert R. Faulk, following his plea of guilty to felony Domestic Abuse -- Prior Pattern of Physical Abuse and misdemeanor Domestic Abuse -- Assault and Battery. The Professional Responsibility Tribunal recommended Respondent be suspended from the practice of law for one year from the date of his interim suspension with an additional year of deferred suspension. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants a two-year suspension from the date of Respondent's interim suspension, September 28, 2020. Respondent is ordered to pay the costs as herein provided within ninety days after this opinion becomes final.

RESPONDENT SUSPENDED FOR TWO YEARS FROM SEPTEMBER 28, 2020, AND ORDERED TO PAY COSTS

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

J. David Ogle, Babbit, Mitchel & Ogle, Oklahoma City, Oklahoma, for Respondent.

ROWE, J.:

¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, initiated summary disciplinary proceedings against Respondent, Robert R. Faulk, pursuant to Rules 7.1 and 7.2, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 & Supp.2014 ch. 1, app. 1-A, following his pleas of guilty to felony Domestic Abuse with Prior Pattern of Physical Abuse, in violation of 21 O.S. § 644.1,1 and misdemeanor Domestic Abuse -- Assault and Battery, in violation of 21 O.S. § 644(C).2 Complainant alleges that these convictions constitute conclusive evidence of Respondent's unfitness to practice law and amount to violations of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S. 2011, ch. 1, app. 3-A, and the RGDP. Complainant contends that Respondent's behavior thus warrants professional discipline.

I. Procedural History

¶2 On May 15, 2019, the District Attorney for Garfield County filed a criminal Information containing the following charges against Respondent: Count 1 -- Domestic Abuse with Prior Pattern of Physical Abuse, in violation of 21 O.S. § 644.1, a felony; Count 2 -- Domestic Assault and Battery by Strangulation, in violation of 21 O.S. § 644(J), a felony; Count 3 -- Intimidation of a Witness, in violation of 21 O.S. § 455, a felony; and Count 4 -- Domestic Abuse -- Assault and Battery, in violation of 21 O.S. § 644(C), a misdemeanor. On September 4, 2020, Respondent entered a plea of guilty to Count 1, felony Domestic Abuse -- Prior Pattern of Physical Abuse, and Count 4, misdemeanor Domestic Abuse -- Assault and Battery. Counts 2 and 3 were dismissed. The District Court in and for Garfield County deferred judgment on the felony conviction for a period of two years and imposed a one-year suspended sentence for the misdemeanor conviction. Respondent was ordered to pay fines and costs and placed on probation, during which time he was required to complete a 52-week domestic violence cessation course and attend weekly substance abuse meetings, among other things.

¶3 On September 11, 2020, Complainant filed a Notice of Criminal Conviction with this Court, detailing Respondent's guilty pleas, convictions, and sentencing terms. On September 28, 2020, this Court entered an Order of Immediate Interim Suspension pursuant to Rule 7.3 RGDP, suspending Respondent from the practice of law and directing him to show cause, if any, why the interim suspension should be set aside. Respondent was also directed to show cause why a final order of discipline should not be imposed, to request a hearing, or to file a brief and any evidence tending to mitigate the severity of discipline.

¶4 On October 5, 2020, Respondent waived his right to a hearing on the interim suspension but requested a hearing for the limited purpose of presenting evidence in mitigation prior to a final discipline order. On October 6, 2020, this Court issued an order granting Respondent's request for a hearing "on the limited scope of mitigation and the recommendation of discipline to be imposed."

¶5 On January 29, 2021, the Professional Responsibility Tribunal ("trial panel") held an evidentiary hearing during which Respondent presented evidence in mitigation. On March 23, 2021, the trial panel filed its report in which it unanimously recommended that Respondent be "suspended from the practice of law for one year from the date of his interim suspension with an additional one year of deferred suspension related to his deferred sentence in the criminal case."

II. Content of the Record

¶6 Complainant submitted Exhibits 1, 2, 3, and 4 in support of its case against Respondent. Exhibit 1 pertains to the incident that prompted the current proceedings; Exhibits 2, 3, and 4 pertain to prior allegations of domestic violence on three separate occasions, in February 2014, August 2013, and March 2008, respectively. Respondent objects to the trial panel's admission of several police reports in Exhibits 2 and 4 containing details about alleged incidents from February 2014 and March 2008.3 Respondent contends that these police reports are inadmissible hearsay.

¶7 Rule 6.12, RGDP, provides, in relevant part, that, "[s]o far as is practicable, the disciplinary proceedings and the reception of evidence shall be governed generally by the rules in civil proceedings." The Oklahoma Evidence Code prohibits the admission of hearsay, except as provided for by an act of the Legislature. 12 O.S.2011 § 2802. Title 12, section 2803 of the Oklahoma Statutes sets out these exceptions. Notably, section 2803(8) provides for the admission of records from a public agency "setting forth its regularly conducted and regularly recorded activities or matters observed pursuant to a duty imposed by law and as to which there was a duty to report, or a factual finding resulting from an investigation made pursuant to authority granted by law." Section 2803(8)(a), however, states in no uncertain terms that "investigative reports by police and other law enforcement personnel" do not fall within this exception. Accordingly, absent a compelling reason for their admission, we find that the police reports in Exhibits 2 and 4 should not have been admitted, and thus, they will not be considered here.

III. Facts Underlying the Criminal Conviction

¶8 On May 11, 2019, as part of graduation festivities, Respondent and his girlfriend began drinking at a local bar in Enid, Oklahoma, sometime between 3:00 P.M. and 4:00 P.M. After leaving the bar, they went to the local country club where they continued drinking. At some point that evening, Respondent and his girlfriend returned to Respondent's house, where Respondent fell asleep. He awoke several hours later to discover that his girlfriend had left the house, apparently taking his vehicle. Respondent suspected that his girlfriend may have gone to the home of some of her friends, a husband and wife, who lived only a few blocks away.

¶9 Respondent walked the short distance to the friends' house, where he knocked aggressively on the front door. When no one answered, he walked around to the back of the house. There he discovered his girlfriend and the husband and wife in a hot tub. At this point, Respondent and the husband got into a verbal altercation, and the husband asked Respondent to leave the property. Before leaving, Respondent's girlfriend entered the home to retrieve some personal items and emerged wearing a towel.

¶10 While on their way home, Respondent discovered that his girlfriend was not wearing anything underneath the towel. Respondent admittedly "lost it" upon discovering this and became violent. As he described it:

I--pushed and--pushed and pulled her in the vehicle. I shoved her against the door, you know. Not--I mean, I--I--I can't--you know, if I was going to give a scale of 1 to 10--I mean, I didn't, like, shove her where the door was going to break or anything like that where she hit her head, but, I mean, I'm--I'm certain that whenever I was shaking her, I was very--I was very aggressive, and I was verbally aggressive, and--and, you know, called her lots of names.

Respondent also threatened to take her back to the friends' house and leave her naked in the front yard.

¶11 Eventually, Respondent and his girlfriend arrived at Respondent's house. Respondent attempted to get her to go inside. When she refused, a struggle ensued, during which Respondent hit her with the towel she had been wearing and dragged her inside. Neighbors who lived across the street from Respondent noticed the struggle and contacted law enforcement.

¶12 At approximately 1:45 A.M. on the morning of May 12, 2019, the Enid Police Department dispatched officers to Respondent's home. When the officers arrived on the scene, they knocked on Respondent's front door and announced their presence, but they received no answer. After one of the officers reported hearing sounds of fighting at the back of the house and fearing that someone might be in imminent danger, the officers entered the home. The officer's found Respondent in one of the bedrooms and placed him under arrest. They found Respondent's girlfriend crouched behind the bedroom door naked and sobbing. She was given an opportunity to get dressed and proceed to the living room to answer questions. Respondent's girlfriend admitted to the officers that Respondent choked her until she passed out and that she was scared because she did not want to die. She also told the officers it was her fault and that she should not have gone to the friends' house. Respondent was transported to the county jail.

IV. Standard of Review

¶13 This Court possesses exclusive jurisdiction in Bar Association disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, ¶10, 895 P.2d 707, 711. We review the evidence de novo to determine whether the allegations of misconduct have been established by clear and convincing evidence. Rule 6.12(c), RGDP; State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, ¶7, 23 P.3d 268, 272. Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." State ex rel. Okla. Bar Ass'n v. Green, 1997 OK 39, ¶5, 936 P.3d 947, 949.

¶14 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶15, 212 P.3d 1186, 1192. We consider the discipline previously imposed for similar professional misconduct to ensure that discipline is administered uniformly. Id. ¶16, 212 P.3d at 1192 (citing State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, ¶37, 991 P.2d 1015, 1025). Discipline, however, is decided on a case-by-case basis to account for differences in the offending conduct and mitigating circumstances. Id.

V. Discussion

¶15 Complainant submits that Respondent's criminal convictions demonstrate his unfitness to practice law and constitute violations of Rule 8.4(b), ORPC, and Rule 1.3, RGDP.

¶16 Rule 8.4(b), ORPC, states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Implicit in the text of Rule 8.4(b) is an acknowledgment that not all criminal convictions demonstrate unfitness to practice law. Fortunately, Comment 2 to Rule 8.4(b) provides some guidance on this point:

Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

¶17 Initially, we note again that pursuant to Rule 7.2, RGDP, the certified copies of the criminal Information, guilty pleas, and the deferred and suspended sentences are considered conclusive evidence of the crimes which prompted these proceedings. Based on the guidance in Comment 2 and our extant jurisprudence, we find that Respondent's convictions for acts of domestic violence clearly demonstrate his unfitness to practice law. See Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217 ("Violent acts in the form of domestic abuse demonstrate a lawyer's unfitness to practice law."); State ex rel. Okla. Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 17, 330 P.3d 11, 15. Thus, Respondent's misconduct amounts to a violation of Rule 8.4(b), ORPC. Furthermore, we find that Respondent has engaged in acts contrary to prescribed standards of conduct, and which bring discredit upon the legal profession, in violation of Rule 1.3, RGDP.

VI. Aggravating and Mitigating Circumstances

¶18 In addition to the rule violations above, the parties have presented evidence of aggravating and mitigating circumstances for this Court's consideration.

A. Aggravating Circumstances

¶19 At the hearing before the trial panel, Complainant presented compelling evidence of Respondent's pattern of alcohol abuse and capacity for violence. Most notably, in August 2013, Respondent was involved in another incident of alleged domestic violence toward the same victim, wherein he slapped her in the face in the parking lot of a bar. Respondent also testified to another incident in which he was involved in a physical altercation with a bouncer at a bar, after throwing a cup of ice at him. Respondent admitted that he was intoxicated during both of these incidents.

¶20 Furthermore, this is not the first time Respondent has faced summary disciplinary proceedings. Complainant initiated summary disciplinary procedures against Respondent in June 2015, following his conviction of misdemeanor public intoxication. The conviction stemmed from Respondent entering the home of his estranged wife without her permission when she was not home. Here again, Respondent admitted that he had consumed alcohol on the night of the incident. Upon review, however, this Court determined there was insufficient cause to proceed with summary disciplinary proceedings because the crime did not demonstrate that Respondent was unfit to practice law.

B. Mitigating Circumstances

¶21 Respondent testified at the hearing that he had a turbulent and traumatic childhood. Both of his parents were prone to substance abuse. When Respondent was approximately five years old, his father, facing legal trouble of his own, jumped bail and fled to Texas, taking Respondent with him. The two lived in Houston, utilizing false names for some time before his father was arrested and sent to prison. Respondent then drifted between the homes of extended family members and the Baptist Children's Home in Moore, Oklahoma. At the age of sixteen, he moved into a small house of his own and worked to support himself during his junior and senior years of high school.

¶22 Additionally, Respondent has made and continues to make substantial efforts to address his substance abuse and anger management issues. Shortly after being released from jail for the incident in question, Respondent underwent evaluations for substance abuse and domestic violence. Based on those evaluations, he engaged the services of a Licensed Alcohol and Drug Counselor, receiving regular counseling until November 2020. After being released from counseling, Respondent began attending weekly meetings of Celebrate Recovery, a twelve-step-based mutual support group for people dealing with substance abuse. Respondent has since become a leader in Celebrate Recovery and hosts a weekly support group meeting for other professionals in his home. He also enrolled in and completed a twelve-hour anger management course in July 2019.

¶23 Since June 2019, Respondent has attended regular therapy sessions with two licensed psychologists, Dr. Alan C. Campbell and Dr. Deborah C. May, to address his substance abuse and capacity for domestic violence. Both Dr. Campbell and Dr. May testified on Respondent's behalf at the hearing before the trial panel, and both attested to Respondent's consistency and commitment in addressing these issues.

¶24 Respondent also presented evidence as to his general character. At the hearing before the trial panel, the Honorable Jason Seigars, Special Judge in Garfield County, testified to Respondent's competency and professionalism as a lawyer. Wade Burleson, Lead Pastor at Emmanuel Enid Church where Respondent regularly attends, testified at the hearing that Respondent has made consistent contributions to the Enid community since beginning his law practice. Finally, Respondent submitted a number of letters from friends and professional acquaintances, all attesting to Respondent's commitment to community involvement and his personal growth since the incident in question.

VII. Discipline

¶25 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d at 1192. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶ 19, 71 P.3d 1, 4. We must also weigh the deterrent effect of our discipline on the Respondent and the Oklahoma Bar. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶ 22, 71 P.3d 18, 29.

¶26 In recent years, we have had occasion to consider several disciplinary cases involving crimes of domestic violence. In State ex rel. Oklahoma Bar Association v. Demopolos, 2015 OK 50, 352 P.3d 1210, the respondent verbally and physically abused his wife while intoxicated, including hitting her with a closed fist in the arm and head. Even after police were called to the scene, the respondent continued his belligerent behavior and made threats of violence toward his wife. Id. ¶ 7, 352 P.3d at 1214. The respondent pled guilty to obstructing a police officer, threatening to perform an act of violence involving or intended to involve serious bodily harm or death, and domestic abuse. Id. ¶ 2, 352 P.3d at 1212. The respondent sought treatment for substance abuse after the incident, including in-patient counseling, but the evidence indicated that he had relapsed twice since then. Id. ¶ 13, 352 P.3d at 1215. The respondent also had a demonstrated history of abusive behavior toward his wife and others when intoxicated. Id. ¶¶ 14-15, 352 P.3d at 1215. We suspended the respondent's license for one year, from the date of his interim suspension, with an additional one-year suspension that would be deferred contingent upon his compliance with certain conditions, which primarily related to ongoing substance abuse treatment. Id. ¶ 31, 352 P.3d at 1219.

¶27 In State ex rel. Oklahoma Bar Association v. Zannoti, 2014 OK 25, 330 P.3d 11, the respondent pled nolo contendre to misdemeanor domestic assault and battery and destruction of property. The charges related to an incident in which the respondent smashed the phone of a former romantic partner, threw her into a wall, and head-butted her in the face, which resulted in substantial injuries. Id. ¶¶ 6-8, 330 P.3d at 13. As a result of the incident, the victim was granted a protective order against the respondent. Id. ¶ 1, 330 P.3d at 11. We suspended the respondent's license for two years. Id. ¶ 25, 330 P.3d at 17.

¶28 In State ex rel. Oklahoma Bar Association v. Givens, 2014 OK 103, 343 P.3d 214, the respondent, on two separate occasions, struck his teenage son while intoxicated. After the first incident, Respondent pled guilty to domestic assault and battery in the presence of a minor child and disturbing the peace. Id. ¶ 2, 343 P.3d at 215. The trial court deferred sentencing for eighteen months, during which time the respondent was ordered to complete a batterer's intervention program. Id. The second incident occurred approximately fourteen months later. Id. ¶ 3, 343 P.3d at 215. The respondent was then sentenced to one year in the county jail, with all time suspended. Id. He was also ordered to undergo counseling and drug testing and to complete a domestic violence program. Id. We suspended the respondent's license for two years and one day from the date of his interim suspension. Id. ¶ 24, 343 P.3d at 219.

¶29 It is incumbent on this Court to demonstrate to the public and members of the Bar that we consider domestic abuse to be a serious breach of a lawyer's ethical duty--a breach that will not be tolerated. Zannotti, 2014 OK 25, ¶ 24, 330 P.3d at 17. The trial panel's recommendation of a one year suspension from the date of Respondent's interim suspension, which would end upon adoption of this opinion, with an additional one-year deferred suspension, does not mete out discipline consistent with the seriousness of Respondent's conduct. Respondent's history of alcohol abuse and violent behavior over the course of several years--culminating in this most recent incident of violence--requires discipline consistent with the seriousness of the offense to protect the integrity of the judicial system and the reputation of the Bar. While Respondent has made laudable strides in his recovery, his effective return to practice upon our decision being rendered would undermine public trust in the legal profession. Accordingly, we find that the appropriate discipline is a two-year suspension from the date of Respondent's interim suspension, September 28, 2020.

VIII. Assessment of Costs

¶30 On March 23, 2021, Complainant filed an application to assess the costs of the disciplinary proceedings, totaling $2,749.85, to Respondent. Respondent did not file an objection to the application. Rule 6.16, RGDP, provides that in disciplinary proceedings where discipline results, "the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown." Respondent is hereby ordered to pay costs in the amount of $2,749.85 within ninety days of the effective date of this opinion.

RESPONDENT SUSPENDED FOR TWO YEARS FROM SEPTEMBER 28,
2020, AND ORDERED TO PAY COSTS

Kane, V.C.J., Kauger, Winchester, Edmondson, Gurich and Rowe, JJ., Concur;

Combs, J. (by separate writing), with whom Darby, C.J., and Kuehn, J., join, Concurring in Part and Dissenting in Part

FOOTNOTES

1 Title 21, Section 644.1 of the Oklahoma Statutes states:

A. Any person who commits domestic abuse, as defined by subsection C of Section 644 of this title, and has a prior pattern of physical abuse shall be guilty of a felony, upon conviction, punishable by imprisonment in the custody of the Department of Corrections for a term of not more than ten (10) years or by a fine not exceeding Five Thousand Dollars ($5,000.00) or by both such fine and imprisonment.

B. For purposes of this section, "prior pattern of physical abuse" means two or more separate incidences, including the current incident, occurring on different days and each incident relates to an act constituting assault and battery or domestic abuse committed by the defendant against a current or former spouse, a present spouse of a former spouse, parents, a foster parent, a child, a person otherwise related by blood or marriage, a person with whom the defendant is in a dating relationship, an individual with whom the defendant has had a child, a person who formerly lived in the same household as the defendant, a person living in the same household as the defendant, a current intimate partner or former intimate partner, or any combination of such persons, where proof of each incident prior to the present incident is established by the sworn testimony of a third party who was a witness to the alleged physical abuse or by other admissible direct evidence that is independent of the testimony of the victim.

2 Title 21, Section 644(C) of the Oklahoma Statutes states:

C. Any person who commits any assault and battery against a current or former intimate partner or a family or household member as defined by Section 60.1 of Title 22 of the Oklahoma Statutes shall be guilty of domestic abuse. Upon conviction, the defendant shall be punished by imprisonment in the county jail for not more than one (1) year, or by a fine not exceeding Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment. Upon conviction for a second or subsequent offense, the person shall be punished by imprisonment in the custody of the Department of Corrections for not more than four (4) years, or by a fine not exceeding Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment. The provisions of Section 51.1 of this title shall apply to any second or subsequent offense.

"Assault" is defined in 21 O.S. § 641 as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another." "Battery" is defined in 21 O.S. § 642 as "any willful and unlawful use of force or violence upon the person of another."

3 We note that Respondent did not object to the admission of Exhibit 3, which also contains police reports about the August 2013 incident.

 

 

Combs, J., with whom Darby, C.J., and Kuehn, J., join,
concurring in part and dissenting in part:

¶1 Although I concur that the Respondent should be disciplined and ordered to pay costs in the amount of $2,749.85 within ninety days, I disagree with the majority's determination of what constitutes appropriate discipline in this case.

¶2 Regarding the May 11, 2019 domestic assault that gave rise to this Rule 7 disciplinary proceeding, I am extremely distressed by the fact that Respondent was charged with the felony offense of Intimidation of a Witness in violation of 21 O.S.Supp.2018, § 455. Respondent waived his right to preliminary hearing as to this count, thereby admitting that the crime was committed and there was probable cause to believe he committed the crime. Statement of Def. on Waiver of Right to Preliminary Hr'g 1, State v. Faulk, No. CF-2019-0200 (Garfield Cty. Dist. Ct. filed Feb. 14, 2020). The dismissal of this charge pursuant to his subsequent plea agreement cannot excuse or forgive his admitted actions of intimidation or the disparaging reflection they have on the practice of law. Moreover, after Respondent was released on his own recognizance within hours of the incident (which in itself is extraordinary), the prosecutor obtained "information that the [Respondent] violated [the court's no-contact] order within a very short time of release from jail"--which I can only surmise was another attempt to intimidate his victim. State's Mot. to Revoke Own Recognizance Bond 1, 3, 5, State v. Faulk, No. CF-2019-0200 (Garfield Cty. Dist. Ct. filed May 15, 2019). Such conduct demonstrates a disregard for the law in furtherance of self-preservation.

¶3 The 2019 incident is at least the fourth domestic abuse incident involving Respondent and this particular victim. Respondent admitted to the Professional Responsibility Tribunal (PRT) that "[t]here had been other times that -- that we've [i.e., he and the same woman] had physical altercations." Tr. 169:22--:23, Jan. 29, 2021. In fact, the PRT heard about two other incidents involving Respondent and the same woman. In August of 2013, witnesses called the police after observing him slap her face in the parking lot of an Enid bar. Id. at 62:16--64:16 (wherein Complainant's investigator testified about the Enid Police Department's records associated with the August 2013 incident and stated that Respondent admitted to slapping the same woman in the face); id. at 106:9--107:4 (wherein one of Respondent's psychologists testified that Respondent had admitted to slapping the same woman at a bar); id. at 169:24--170:9 (wherein Respondent admitted that the incident at the bar "was part of the current charges, the prior pattern"); Complainant's Hr'g Ex. 3 (containing the Enid Police Department's records for the August 2013 incident). In February of 2014, the same woman informed police that she attempted to leave Respondent's residence after he became belligerent over a text message he viewed on her phone, but that Respondent slammed doors to prevent her from leaving, carried her back indoors after she escaped, made it difficult for her to breathe when he covered her mouth and nose to keep her quiet, threw her against a wall hard enough to make several frames fall, and sat on top of her while rubbing her phone on her face and demanding that she identify the sender of the text message. Tr. 64:17--65:13 (wherein Complainant's investigator testified about the Enid Police Department's records associated with the February 2014 incident); id. at 105:15--106:8 (wherein one of Respondent's psychologists testified that Respondent had admitted to a 2014 incident involving a cell phone and a text message); Complainant's Hr'g Ex. 2 (containing the Enid Police Department's records for the February 2014 incident). Even with the majority's exclusion of Exhibit 2 as hearsay, the psychologist's testimony regarding what Respondent told him about the February 2014 incident is not hearsay, as it constitutes an admission by Respondent. See 12 O.S.2011, § 2801(B)(2)(a) ("A statement is not hearsay if: . . . [t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity . . . ."). Furthermore, the majority references a fourth incident involving the same victim insofar as it discusses a separate Rule 7 disciplinary proceeding. See Majority Op. ¶ 20. In June of 2015, Complainant gave this Court notice of an incident that occurred in July of 2014 wherein Respondent, during a period of estrangement from the same woman, entered without permission a residence she was sharing with another man and turned on several lights in order to "send a message." Ex. 1 to Complainant's Am. Notice & Transmittal of Record Relating to Deferred Sentence, at 3, State ex rel. Okla. Bar Ass'n v. Faulk, No. SCBD-6274 (Okla. filed June 5, 2015) (consisting of a probable cause affidavit attached to the criminal information filed in State v. Faulk, No. CM-2014-0872 (Garfield Cty. Dist. Ct. filed Aug. 8, 2014), a case which has now apparently been expunged).1 Beyond these four incidents, the record in the current disciplinary proceeding is replete with references to other unconfirmed incidents of domestic abuse. See, e.g., Complainant's Ex. 2, at 5 (wherein an officer responding to the February 2014 incident reports that the woman "showed [him] a dark spot below her left elbow" and "stated that the injury occurred from [Respondent] dragging her by her hair down a hallway during an altercation that happened about June of 2013," an incident which she had reported but that she ended up "l[ying] about what happened to keep [Respondent] out of trouble"); Complainant's Ex. 1, at 20 (wherein one of the police officers who followed up with the victim in May of 2019 expressed some familiarity with the problems between her and Respondent and referenced a 2017 incident where Respondent "was taking all of her . . . possessions out of the house and onto the front lawn because he had gotten mad at her").

¶4 Finally, Respondent has also had domestic abuse problems with other women, including the mother of his children. In 2008, Respondent's ex-wife reported to police that, during an argument, Respondent had shoved her head toward a pillow, had lain down on top of her to hold her down in bed, had bitten her index finger and right ear, and had covered her mouth and nose with his hand to keep her quiet, to the point that she had a hard time breathing.2 Tr. 65:14--66:19, 69:15--71:23 (wherein Complainant's investigator testified about the Enid Police Department's records associated with the 2008 incident); id. at 107:10--:17 (wherein one of Respondent's psychologists testified that Respondent had admitted to potential problems with the woman that was the mother of his children); Complainant's Hr'g Ex. 4 (containing the Enid Police Department's records for the 2008 incident).

¶5 "Violent acts in the form of domestic abuse demonstrate a lawyer's unfitness to practice law." State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d 214, 217. Each of these domestic abuse incidents, however, has coincided with Respondent's consumption of alcohol to the point of intoxication. "[M]embers of the bar must be reminded substance abuse of any kind is incompatible with the practice of law." Id. ¶ 12, 343 P.3d at 217 (quoting State ex rel. Oklahoma Bar Ass'n v. Giger, 2001 OK 96, ¶ 21, 37 P.3d 856, 864).

¶6 Respondent's crime, conviction, and sentence were widely reported by local and state media outlets, most of which had a headline or a lead paragraph that identified Respondent as an "Enid attorney." Tr. 61:14--62:15 (wherein Complainant's investigator testified about news reports concerning Respondent's arrest and conviction); Complainant's Hr'g Ex. 5 (containing news articles from the Enid News & Eagle with the following headlines: (1) "Enid attorney arrested on domestic battery complaint"; (2) "Attorney charged with 3 felonies, 1 misdemeanor"; and (3) "Enid attorney pleads guilty to 2 charges of domestic abuse"). Even Respondent's pastor testified that the newspaper story following Respondent's arrest was "very graphic" and that he was "mortified and shocked" that something so graphic would be written. Tr. 20:2--:22. Even more to the point, one witness expressed hesitation in cooperating with police due to fear of retribution at the hands of Respondent. Complainant's Hr'g Ex. 1, at 14 (wherein a police officer reported that the witness who called police expressed a desire to "write a statement for us but not until R[espondent] left the area because [the witness] was afraid of retaliation"). All of this demonstrates the ill repute that Respondent has brought upon the legal profession.

¶7 Based on Respondent's plea of guilty to Assault and Battery with Prior Pattern of Physical Abuse, his admitted involvement in other domestic abuse incidents, his ongoing struggle with alcohol, and the disrepute his actions have brought upon the legal profession, a suspension from the practice of law is not sufficient discipline. The privilege to practice law is hard-earned, and the privilege to continue practicing after demonstrating unfitness to practice should be no less hard-earned. I would disbar him.

FOOTNOTES

1 The prosecution eventually dismissed the charge of breaking and entering and filed new charges of public intoxication, to which Respondent pleaded guilty. See Exs. 2--4 to Complainant's Am. Notice & Transmittal of Record Relating to Deferred Sentence, State ex rel. Okla. Bar Ass'n v. Faulk, No. SCBD-6274 (Okla. filed June 5, 2015) (showing the motion to dismiss and order of dismissal in State v. Faulk, No. CM-2014-0872 (Garfield Cty. Dist. Ct. filed May 22, 2015) and the new criminal information and deferred sentence in State v. Faulk, No. CM-2015-0533 (Garfield Cty. Dist. Ct. May 22, 2015), another case which has now apparently been expunged). In the end, this Court dismissed Respondent's prior Rule 7 proceeding because a majority of the Court believed that a conviction for public intoxication failed to demonstrate unfitness to practice law. State ex rel. Okla. Bar Ass'n v. Faulk, No. SCBD-6274, slip op. at 1 (Okla. Sept. 14, 2015).

2 Again, even with the majority's exclusion of Exhibit 4 as hearsay, the psychologist's testimony regarding what Respondent told him about the 2008 incident is not hearsay, as it constitutes an admission by Respondent. See 12 O.S.2011, § 2801(B)(2)(a).

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKYDiscussed
 1997 OK 39, 936 P.2d 947, 68 OBJ 1288, State ex rel. Oklahoma Bar Ass'n v. GreenCited
 2001 OK 96, 37 P.3d 856, 72 OBJ 3401, STATE ex. rel. OKLAHOMA BAR ASSOCIATION v. GIGERDiscussed
 1995 OK 25, 895 P.2d 707, 66 OBJ 1108, State ex rel. Oklahoma Bar Assn. v. HoldenDiscussed
 2003 OK 13, 71 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWARTDiscussed
 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLORDiscussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEYDiscussed at Length
 2014 OK 25, 330 P.3d 11, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTIDiscussed at Length
 2014 OK 103, 343 P.3d 214, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENSDiscussed at Length
 2015 OK 50, 352 P.3d 1210, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOSDiscussed
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. DorisDiscussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 2801, DefinitionsDiscussed
 12 O.S. 2802, Hearsay RuleCited
Title 21. Crimes and Punishments
 CiteNameLevel

 21 O.S. 644.1, Domestic Abuse with Prior Pattern of Physical Abuse - PenaltyDiscussed
 21 O.S. 455, Preventing Witness from Giving TestimonyDiscussed
 21 O.S. 641, Definition of AssaultCited
 21 O.S. 642, Definition of BatteryCited
 21 O.S. 644, Punishment for Assault and BatteryDiscussed at Length

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA