OSCN Found Document:STATE OF OKLAHOMA, ex rel. OBA, v. KELLY JOHN BARLEAN

 

 
 STATE OF OKLAHOMA, ex rel. OBA, v. KELLY JOHN BARLEAN2026 OK 30Case Number: SCBD-7652Decided: 04/28/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 30, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
KELLY JOHN BARLEAN, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Complainant, the State of Oklahoma ex rel. Oklahoma Bar Association (OBA), brought disciplinary proceedings against Respondent based on (a) convictions in two criminal cases; (b) a judicial grievance; (c) two counts of other professional misconduct filed by the OBA. We find clear and convincing evidence that Respondent's conduct requires disbarment. We order Respondent to pay costs of $2,532.10 within ninety days from the date of this Opinion.

RESPONDENT DISBARRED; APPLICATION FOR COSTS GRANTED

Jana J. Harris, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Kelly John Barlean, Oklahoma City, Oklahoma, Respondent, pro se.

KUEHN, V.C.J.:

¶1 This matter is before the Court for imposition of final discipline under combined Rules 6 and 7.2, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Ch. 1, App. 1--A. Respondent is licensed to practice law in Oklahoma. 

¶2 Rule 7 proceedings (SCBD 7652) against Respondent began on April 26, 2024. On May 20, 2024, this Court issued an Order of Immediate Interim Suspension pursuant to Rule 7.3 of the RGDP. 5 O.S. Ch. 1, app. 1--A. Respondent filed an Answer and moved to set that Order aside. This Court denied that motion and referred the matter to the Professional Responsibility Tribunal (PRT) for a hearing and recommendation of final discipline. The hearing was set for October 2-3, 2024. In the interim, Respondent (a) sought to depose persons not connected with his state criminal charges, (b) asked to postpone the hearing so he might conduct discovery in his Rule 7 proceedings; and (c) moved to continue the hearing after the State sought to accelerate his deferred sentences. The Rule 6 complaint against him (SCBD 7779) was filed on September 27, 2024. Respondent filed an Answer to that complaint. The PRT struck the October hearing dates and reset the Rule 7 matter for a November status conference.

¶3 On October 18, 2024, this Court consolidated the matters and directed that both cases be resolved with a joint hearing, a single record, and a single trial panel report. On October 30, 2024, Respondent moved to stay the proceedings after a fire destroyed his home. On November 28, 2024, the PRT denied Respondent's motion for depositions, and set deadlines for discovery and exchange of witness lists and exhibits. The hearing was rescheduled for March 26, 2025. Responded had participated in the pretrial proceedings by filing answers, responses, and motions. Respondent had notice of the March 26 hearing. However, Respondent did not appear and failed to participate in the hearing. The Report of the Trial Panel was filed with this Court on April 25, 2025, and the OBA's brief was filed on May 19, 2025. Respondent did not file a brief.

¶4 The Trial Panel recommended a minimum imposition of discipline of suspension of two years and one day, while noting harsher discipline was warranted. We agree and disbar Respondent.

STANDARD OF REVIEW

¶5 This Court has exclusive original jurisdiction over bar disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Lance, 2023 OK 98540 P.3d 458de novo, to independently determine whether the OBA has shown clear and convincing evidence of misconduct; we consider the PRT report but are not bound by its conclusions and recommendations. State ex rel. Okla. Bar Ass'n v. Conrady, 2025 OK 74578 P.3d 174State ex rel. Okla. Bar Ass'n v. Silvernail, 2022 OK 68522 P.3d 464

RULE 7 PROCEEDINGS

¶6 Rule 7.1: A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A.

¶7 Rule 7 applies where a lawyer has been convicted of a crime. Certified copies of the conviction, including guilty pleas, are conclusive evidence of commission of the crime and provide a sufficient basis for discipline. Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A. Not every conviction results in discipline. Silvernail, 2022 OK 68State ex rel. Okla. Bar Ass'n v. Dyer, 2024 OK 72558 P.3d 22Lance, 2023 OK 98quoting State ex rel. Okla. Bar Ass'n v. Armstrong, 1990 OK 9791 P.2d 815Silvernail, 2022 OK 68

¶8 On January 5, 2023, Respondent pled guilty to two misdemeanor charges of Domestic Assault and Battery in each of Oklahoma County Case Nos. CF-2021-3557 and CM-2022-4468. 

¶9 Under Respondent's plea agreement, the felony charge was reduced to a misdemeanor and Respondent pled guilty to both charges. He agreed to supervised probation with requirements including restitution, community service, completion of an intervention program, anger management classes, an alcohol and drug assessment and any recommended treatment. Respondent failed to complete these requirements. The State moved to accelerate his deferred sentence on September 30, 2024; on November 22, 2024 Respondent pled no contest to the motion to accelerate. Both counts were reduced to convictions and he was fined. The Oklahoma County Court Clerk did not report Respondent's convictions to the OBA, but they were discovered during the OBA investigation of the Bondurant grievance, discussed below.

Discussion

¶10 This Court's May 20, 2024 order of interim suspension directed Respondent to show cause why a final order of discipline should not be imposed. In his Answer, Respondent claimed that a June 2021 arrest, search of his house, and incarceration-unrelated to the charges at issue here-was illegal and led him down a "dark, self-destructive path" which culminated in his arrest for domestic violence by strangulation, the basis for the charge in CF-2021-3557. He attached a copy of a civil rights complaint he had filed in federal court as a result of the allegedly illegal search and incarceration. In that complaint, Respondent blamed the victim in both criminal cases for his troubles. Respondent also claimed in his Answer that he had barely practiced law in Oklahoma and retired from legal practice in the 2010s. He appeared to argue that there would be no point in imposing a suspension from practice, or any form of discipline, since he did not practice law or represent clients.

¶11 This Court has held that domestic violence is itself a "serious breach of a lawyer's ethical duty and will not be tolerated." State ex rel. Oklahoma Bar Ass'n v. Lockard, 2023 OK 110538 P.3d 871quoting State ex rel. Okla. Bar Ass'n v. Zannotti, 2014 OK 25

¶12 The OBA has shown by clear and convincing evidence that Respondent's conduct adversely reflects on his judgment and thus his fitness to practice law. Lance, 2023 OK 98Silvernail, 2022 OK 68State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29275 P.3d 133

Rule 6 Proceedings

¶13 "Rule 6 sets forth the process by which the OBA processes grievances against attorneys, conducts investigation, and presents the results and recommendations to this Court for disciplinary action." Lance, 2023 OK 98ex parte during proceedings without authorization by law or court order, or engage in conduct intended to disrupt a tribunal. Rules 3.5(a), (b), (d) (ORPC). A lawyer shall not knowingly make a statement about a judge's qualifications or integrity that is false, or with reckless disregard as to its truth. Rule 8.2 (ORPC). Misconduct includes a violation or attempted violation of the Rules of Professional Conduct. Rule 8.4 (ORPC).

¶14 Respondent is charged in three specific grievances with violating provisions of the Oklahoma Rules of Professional Conduct (ORPC), Title 5, Chapter 1, Appendix. 3-A, and Rules 1.3 and 5.2 of the RGDP.

Count I, the Bondurant Grievance

¶15 In 2024, Respondent's ex-wife and son sought protective orders against him. They claimed he had fits of rage, sent them threatening text messages, and would not leave them alone despite being told to stop contacting them. On March 27, 2024, Judge Bondurant presided over a combined hearing in both cases. Testimony showed that Respondent repeatedly left packages and gifts on the petitioners' porch. The Judge later testified that both petitioners' fear of Respondent during the hearing was "palpable" and "visible". Initially Judge Bondurant believed that Respondent simply might not understand that his actions were making the petitioners afraid. She was inclined to set the case six months out to give Respondent the chance to "stop doing what he was doing" and resolve the problem without a protective order. So she asked Respondent if he intended to stop. Judge Bondurant testified that Respondent had up to that point represented himself professionally and politely. However, she said, with that question his entire demeanor changed and he responded, "No, I don't intend to stop. They don't know what they need. I know what they need." At that point Judge Bondurant found there was a clear need for a protective order.

¶16 After the hearing the Judge issued protective orders in both cases, in effect until March 27, 2026. The orders prohibited Respondent from any contact with his ex-wife and son, unless authorized by the court; from harassing, stalking or interfering with them; from any conduct that would place them in reasonable fear of bodily injury to themselves or relatives. He was ordered to remain at least one hundred yards away at all times. The day after the Orders were issued, at approximately 9:00 p.m., Respondent left two voicemail messages for Judge Bondurant. The first warned that he planned to lodge a judicial complaint against her. In the second he mentioned being jailed after a disagreement with a different judge, stated he had been a military unarmed combat instructor, and then said, "I don't appreciate incompetent judges, and I take care of them." Judge Bondurant testified that Respondent's personality in the messages was starkly different from what she'd seen in her courtroom. Given Respondent's history of violent behavior, Judge Bondurant notified courthouse security. After that, she filed this grievance. She stated this was because of the "unstable nature" of the phone messages, plus Respondent's change, within 24 hours, from presenting with decorum and control to expressing such anger and rage.

¶17 Respondent twice failed to respond to notice of the grievance sent him by the OBA. In July 2024, two months after the OBA's second letter, Respondent emailed the OBA stating he had just read it and asking about the status of the complaint. In August 2024 Respondent again asked about the status of the grievance, and told the OBA he planned to file a judicial complaint against Judge Bondurant. The OBA referred Respondent to its previous letters for information about the grievance requirements. Respondent has never responded to the grievance. OBA alleges this violates Rule 3.5(a), 3.5(b), and 3.5(d), as well as Rule 8.2(a) and Rule 8.4(a) of the ORPC, and Rules 1.3 and 5.2 of the RGDP.

¶18 OBA charges that these actions reflect adversely on the legal profession and Respondent's fitness to practice, in violation of Rules 3.5(a), 3.5(b) and (d), Rule 8.2, Rule 8.4(a), ORPC, and Rule 1.3 and Rule 5.2, RGDP.

Count II, The Illinois Protective Orders

¶19 This involves members of the W family and their counsel in Illinois. Respondent met the Ws socially several years ago, when they were in Oklahoma. The Ws eventually moved to Illinois; husband J.W. is a law school graduate but does not practice law. At some point Respondent and J.W.'s wife, L.W., had a sexual relationship, which continued after the family moved to Illinois. The record indicates that L.W. ended the relationship after she became concerned about Respondent's aggressive behavior. Thereafter Respondent engaged in a sustained campaign, conducted primarily through social media, text messaging, and email, to, as he threatened, ruin or destroy the W family and J.W.'s career.

¶20 Starting in Fall 2023, Respondent contacted several people in connection with this campaign. He contacted J.W.'s mother, M.D.W., through a Facebook message. The two were not Facebook friends and she had neither heard of nor met Respondent. The messages were sexually suggestive and sexually explicit, referring both to Respondent's relationship with L.W. and to potential sexual activity with M.D.W. herself. M.D.W. applied for a protective order; in response Respondent sent her disparaging messages about her appearance. At the same time Respondent sent a series of harassing messages to J.W.'s workplace. They included sexually suggestive and explicit photographs of L.W. After receiving these, J.W. explained the situation to the office human resources department, which encouraged him to file for a protective order for himself and his children. And during the same time period, Respondent sent numerous texts to L.W. He stated he would destroy the family and J.W.'s career, that he would crush J.W. "like a bug", and use his legal skills to file several lawsuits against them in order to cause them pain and take them down. Respondent threatened that the W children would be "collateral damage". He stated that he had been to Illinois and knew where both M.D.W and the Ws lived. He repeatedly stated that the W family deserved this for their actions against him. L.W. also applied for a protective order. L.W., M.D.W., and J.W. and the children were granted protective orders in April 2024.

¶21 Illinois attorney Brad Tengler represented M.D.W. and J.W. in their applications for protective orders. After Tengler was hired, Respondent sent harassing messages to his office. They included sexually suggestive and explicit photographs of L.W., and emails threatening to send more explicit videos which would be admitted in the legal proceedings, and to include information in the public filings and testimony which would destroy J.W.'s business. One message warned Tengler not to provoke Respondent "in litigation or in life", because he was trained to deal with adversaries and had not failed. Tengler took this as a threat of physical violence against him personally.

¶22 OBA charges that these actions reflect adversely on the legal profession and Respondent's fitness to practice, in violation of Rule 1.3, RGDP.

Count III, Conduct in Response to SCBD No. 7552

¶23 Respondent sent the OBA more than twenty emails after the Rule 7 Notice of Judgment and Sentence was filed. He claimed the criminal charges would be dismissed (as discussed above, they were not). He called this Court incompetent, a joke, redneck and lazy, invited the OBA to "bring it on bitch", and stated he was overqualified for Oklahoma. Along with a certificate of completion of his required anger management program, he wrote, "I don't strangle. I crush or pull out voice boxes. Ask my Airborne instructors." He suggested the female OBA attorney was embarrassed to be "schooled by a Man", and threatened to drag the State through a federal Section 1983 civil rights claim. He invited an OBA paralegal trying to help him with subpoenas to "come after me so I can show you what the United States trained me to do to Communists."

¶24 OBA charges that these actions reflect adversely on the legal profession and Respondent's fitness to practice, in violation of Rule 1.3, RGDP.

Discussion

¶25 Respondent filed an Answer to this complaint. Regarding Count I, Respondent claimed that Judge Bondurant lied and made a frivolous grievance against him. He claimed she had winked at him during the proceedings, suggesting that he didn't have to pay costs, and then improperly found him indigent; he argued this violated the Canons of Judicial Conduct. He claimed any criticism of the judge was merely an exercise of his First Amendment rights. He referred to the two voicemails to Judge Bondurant as "instructional" and, regarding the charge that he had left them, asked, "so what?" As to the Illinois protective orders in Count II, Respondent blamed J.W. for the entire thing. Respondent did admit that he is not "a choirboy", with a "colorful youth and felonious peccadillos." Respondent suggested that his parole officer was aware of the Illinois events and untroubled by them.

¶26 "Fitness to practice law entails more than the ability to handle cases but involves the continuing qualification of good moral character and respect for the law." State ex rel. Okla. Bar Ass'n v. Littlefield, 2023 OK 53529 P.3d 185

¶27 Angry with Judge Bondurant for issuing protective orders against him, Respondent made two ex parte calls and left her threatening voicemail messages. Responding to the threats, the judge alerted courthouse security. That is, Respondent communicated ex parte in order to illegally influence a judge, and his intentional conduct disrupted a tribunal, all in violation of Rules 3.5(a), (b), (d) (ORPC). The messages themselves included false statements about the judge's qualifications or integrity in violation of Rule 8.2 (ORPC). This conduct discredits the legal profession in violation of Rule 1.3 (RGDP) Respondent also failed to timely respond to the OBA's notifications, once the grievance investigation had begun, in violation of Rule 5.2 (RGDP). And all these violations of the Rules of Professional Conduct are contrary to Rule 8.4 (ORPC).

¶28 During the course of events outlined in Count II, Respondent repeatedly sent lewd, sexually suggestive and explicit messages to members of the W family and J.W.'s employer, as well as attorney Tengler. He threatened the W children. Although he claimed to be retired, Respondent gleefully threatened to use his legal skills to ruin the W family, cause them embarrassment, and destroy J.W.'s career. He used improper and threatening tactics to fight all three family members' attempts to get protective orders against him, including improper messages and threats to their attorney. Respondent throughout consistently blamed the W family, particularly J.W., for Respondent's own actions. This entire course of conduct brought not only discredit, but disgrace upon the legal profession in violation of Rule 1.3 (RGPC).

¶29 In his Answer Respondent did not address the frequency or content of his emails to the OBA which form the basis for Count III. Those began a day after the Rule 7 complaint (SBCD No 7652) was filed. They included threats against OBA personnel (including the prosecuting attorney), as well as language disparaging this Court's fitness and competence and inappropriate comments. At the very least, they show astonishingly poor judgment for any lawyer, much less one in Respondent's position. These messages brought discredit on the legal profession and violated Rule 1.3 (RGPC).

DISCIPLINE

¶30 We turn to the question of appropriate discipline. Respondent engaged in persistent professional misconduct over several years and in two states. He claims he has retired from the practice of law. However, he represented himself in the Oklahoma protective order hearings that formed the basis for the Rule 6 Bondurant grievance, in the Illinois protective order hearings, in the federal lawsuit he refers to in his pleadings, and in these disciplinary proceedings. Even assuming he was acting pro se, every party was aware that Respondent was a lawyer licensed to practice in Oklahoma, and he made frequent reference to his superior legal skills.

¶31 This Court's goal in disciplinary proceedings is to protect the public and preserve the integrity of the judicial system. Lockard, 2023 OK 110Lance, 2023 OK 98. We may review four factors, including: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors; we will look at the whole record. Id.

¶32 The common threads in Respondent's conduct are violence or the threat of violence and harm. First, Respondent was twice convicted of domestic violence; in both instances the victim was injured (Rule 7). Furthermore, the protective order charges forming the basis of the Bondurant grievance (Rule 6, Count I) stemmed from Respondent's actions putting his ex-wife and son in fear, and his stated intention to continue that conduct. Respondent made violent threats to Judge Bondurant and the OBA (Rule 6, Counts I and III). His communications to the W family and Tengler, in addition to lewd and suggestive comments, contained threats to "destroy" and "ruin" the family, and to make the W children "collateral damage". M.D.W., J.W., Tengler, and Judge Bondurant all testified that these threats made them afraid of Respondent and what he might do. Because Respondent did not participate in the PRT hearing, the only mitigating evidence in the record are Respondent's claims (raised in pleadings) that he is in ill health, was injured while in jail in 2021, began drinking heavily, and became aggressive.

¶33 We have consistently imposed discipline where violence is involved. We recently imposed a six-month suspension for a single domestic violence incident with significant mitigating circumstances and a clear treatment plan. Lockard, 2023 OK 110See, e.g., State ex rel. Okla. Bar Ass'n v. Faulk, 2021 OK 46496 P.3d 612Zannotti, 2014 OK 25See, e.g., State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103Conrady, 2012 OK 29Lance, 2023 OK 98Silvernail, 2022 OK 68

¶34 This Court does not condone violent conduct by attorneys. Nor do we condone harassment, threats, or inappropriate or suggestive comments and communications. Judge Bondurant asked Respondent directly if he would stop the actions that put his ex-wife and son in fear, and he said he would not; then he threatened the judge and attacked her competence. Respondent initiated and carried out a campaign of harassment and threats against the W family and attorney Tengler over a period of several months. He failed to respond to the Bondurant grievance, and made threatening and inappropriate communications to the OBA. And, of course, he admitted to two counts of domestic violence.

CONCLUSION

¶35 Respondent's conduct reveals a consistent pattern of violence and poor judgment compelling our conclusion that Respondent is unfit to practice law. He is disbarred. The OBA filed an application to assess costs of $2,352.10, pursuant to Rules 6.13 and 6.16, (RGDP). We find the payment of costs appropriate. Respondent is ordered to pay costs in the amount of $2,352.10 within ninety days from the date of this Opinion.

RESPONDENT IS DISBARRED 
AND ORDERED TO PAY COSTS OF $2,352.10

ALL JUSTICES CONCUR.

FOOTNOTES